## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PERSONAL PAC, an Illinois not for profit corporation, MARCENA W. LOVE, GRACE ALLEN NEWTON, | ) ) ) ) | |
| Plaintiffs, | ) ) | Judge |
| v. | ) ) | No.    12 CV 1043 |
| WILLIAM M. MCGUFFAGE, Chairman of the Illinois State Board of Elections; JESSE R. SMART, Vice Chairman of the Illinois State Board of Elections; HAROLD D. BYERS, Member of the Illinois State Board of Elections; BETTY J. COFFRIN, Member of the Illinois State Board of Elections; ERNEST L. GOWEN, Member of the Illinois State Board of Elections; JUDITH C. RICE, Member of the Illinois State Board of Elections; BRYAN A. SCHNEIDER, Member of the Illinois State Board of Elections; CHARLES W. SCHOLZ, Member of the Illinois State Board of Elections, all in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

### Nature of the Action

1.     This is a First Amendment case, challenging the constitutionality of

two provisions of the Illinois Election Code. Under Section 5/9-2(d) of the Election

Code, the Illinois General Assembly has prohibited any person from maintaining or

establishing more than one political action committee ("PAC"). 10 ILCS 5/9-2(d).

Under Section 5/9-8.5(d) of the Code, with regard to state and local elections, the

General Assembly has prohibited PACs from accepting contributions over specified

limits, even if the funds are segregated in a separate account or PAC and used only

for "independent expenditures." 10 ILCS 5/9-8.5(d). Both provisions violate the

First Amendment to the United States Constitution, as made clear by *Citizens*

*United v. FEC*, 130 S. Ct. 876 (2010) and *Wisconsin Right to Life State Political*

*Action Committee v. Barland*, 664 F.3d 139 (7th Cir. 2011). This complaint seeks a

declaration that Sections 5/9-2(d) and 5/9-8.5(d) of the Illinois Election Code are

unconstitutional. In addition, this complaint seeks injunctions preliminarily and

permanently barring their enforcement.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this case under 28 U.S.C. §§ 1331,

1343(a)(3), and 2201.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff Personal PAC is an Illinois not-for-profit corporation and a

bipartisan, statewide political action committee, dedicated to preserving

reproductive rights and family planning services in Illinois and to electing pro-

choice candidates to state and local office.

5.      Plaintiff Marcena W. Love ("Love") is a resident of Cook County,

Illinois and the founder, Chair Emeritus, and one of the two original incorporators

of Personal PAC.

6. Plaintiff Grace Allen Newton ("Newton") is a resident of Cook County, Illinois, and a member of the Executive Committee of the Board of Directors of Personal PAC and a former Chairperson of the Board of Directors of Personal PAC.

7. Defendants are the Illinois officials charged with enforcing the provisions of the Illinois Election Code at issue in this case.

8. Defendant William M. McGuffage is the Chairman of the Illinois State Board of Elections ("ISBE"). He is sued in his official capacity.

9. Defendant Jesse R. Smart is the Vice Chairman of the ISBE. He is sued in his official capacity.

10. Defendant Harold D. Byers is a Member of the ISBE. He is sued in his official capacity.

11. Defendant Betty J. Coffrin is a Member of the ISBE. She is sued in her official capacity.

12. Defendant Ernest L. Gowen is a Member of the ISBE. He is sued in his official capacity

13. Defendant Judith C. Rice is a Member of the ISBE. She is sued in her official capacity.

14. Defendant Bryan A. Schneider is a Member of the ISBE. He is sued in his official capacity.

15. Defendant Charles W. Scholz is a Member of the ISBE. He is sued in his official capacity.

## STATEMENT OF FACTS

16.     Personal PAC was established in 1978 by Plaintiff Love and others who understood that the only way to ensure that the laws in Illinois would protect reproductive rights was to elect a majority of solidly pro-choice candidates in Illinois. Personal PAC was formed to raise money to recruit, support, and elect pro-choice candidates across the political spectrum to state and local offices in Illinois.

17.     Since its formation, Personal PAC has become a powerful voice for reproductive justice in Illinois. Since 1990, Personal PAC has been extensively involved in the election campaigns of more than 150 successful pro-choice candidates for state and county offices. These elected officials work with Personal PAC to keep anti-choice restrictions from becoming law and to expand access to reproductive healthcare for all women and girls in Illinois.

18.     Personal PAC makes it possible for like-minded individuals who are pro-choice and supportive of family planning services to pool their funds and thus, to speak more loudly and influence the outcome of elections more profoundly than if they were acting alone. To carry out its mission, every year Personal PAC spends significant amounts of money on political activities such as voter identification programs, professionally developed direct mail, election day get-out-the-vote programs, television advertisements, and volunteer coordination.

19.     Recently, the law applicable to PACs has changed. It changed as a result of the enactment of new campaign finance laws in Illinois (Public Act 96-832 (S.B. 1446), signed December 9, 2009, effective January 1, 2011) as well as the

United States Supreme Court's decision *Citizens United v. FEC*, 130 S. Ct. 876

(2010) and the Seventh Circuit's application of that decision in *Wisconsin Right to*

*Life State Political Action Committee v. Barland*, 664 F.3d 139 (7th Cir. 2011).

20.     This case arises because of the conflict between the holdings in

*Citizens United* and *Wisconsin Right to Life*, on the one hand, and Illinois's newly-

enacted restrictions on contributions to PACs, as applied to PACs that make solely

independent expenditures or have independent-expenditure-only accounts, on the

other hand.

21.     In the idiom of campaign finance, an "independent expenditure" is

spending for an activity that expressly advocates the election or defeat of a

candidate but is not coordinated with any candidate or political party. More

specifically, under Illinois law,

> "Independent expenditure" means any payment, gift,
> donation, or expenditure of funds (i) by a natural person
> or political committee for the purpose of making
> electioneering communications or of expressly advocating
> for or against the nomination for election, election,
> retention, or defeat of a clearly identifiable public official
> or candidate and (ii) that is not made in connection,
> consultation or concert with or at the request or
> suggestion of the public official or candidate, the public
> official's or candidate's designated political committee or
> campaign, or the agent or agents of the public official,
> candidate, or political committee or campaign.

*Cf.* 11 C.F.R. 100.16 (for the similar definition used under federal law).

22.     Under the holdings in *Citizens United* and *Wisconsin Right to Life,*

neither the federal government nor the states can place dollar limits on

independent-expenditure-only PACs or PACs that have independent-expenditure-only accounts.

23.     Personal PAC desires to exercise this First Amendment right, as articulated and guaranteed by *Citizens United* and *Wisconsin Right to Life*, to raise and spend funds for independent expenditures without contribution or spending limits. However, Personal PAC is prevented from doing so by the two provisions of the Illinois Election Code that are the subject of this lawsuit — Sections 5/9-2(d) and 5/9-8.5(d). 10 ILCS 5/9-2(d) and 10 ILCS 5/9-8.5(d).

24.     As a result of Code Sections 5/9-2(d) and 5/9-8.5(d), Personal PAC cannot currently: (a) lawfully receive more than $10,000 from any individual or $20,000 from any corporation, labor organization or association during a single calendar year; or (b) as an alternative to raising and spending the money itself, establish one or more additional PACs to receive and spend funds in excess of Illinois's statutory contribution limits.

25.     Personal PAC cannot lawfully establish one or more additional PACs to receive and spend funds it cannot receive or spend itself because of Section 10 ILCS 5/9-2(d), which provides that:

> Beginning January 1, 2011, no natural person, trust,
> partnership, committee, association, corporation, or other
> organization or group of persons forming a political action
> committee shall maintain or establish more than one
> political action committee.

26.     At the same time, Section 5/9-8.5(d) imposes statutory limits on the

total contributions Personal PAC or any other PAC can receive, including

independent-expenditure-only funds, by providing, in relevant part, that:

> During an election cycle, a political action committee
> may not accept contributions with an aggregate value
> over the following: (i) $10,000 from any individual, (ii)
> $20,000 from any corporation, labor organization,
> political party committee, or association, or (iii) $50,000
> from a political action committee or candidate political
> committee. A political committee many not accept
> contributions from a ballot initiative committee.

27.     But for the prohibitions contained in sections 5/9-2(d) and 5/9-8.5(d) of

the Illinois Election Code, Personal PAC would immediately: (a) create a

segregated, independent-expenditure-only account for the purpose of soliciting and

receiving contributions in excess of current limits and for use solely for

independent expenditures to elect pro-choice candidates, both in the current

election cycle and in future election cycles; (b) establish one or more additional

independent-expenditure-only PACs to receive those contributions; or (c) become a

PAC that exclusively makes independent expenditures, again, to receive those

contributions. However, Sections 5/9-2(d) and 5/9-8.5(d) of the Illinois Election

Code have prevented Personal PAC from exercising its First Amendment rights to

make these choices.

28.     But for Sections 5/9-2(d) and 5/9-8.5(d), Personal PAC would solicit

and raise funds in excess of the current statutory caps, in the current election cycle

and in future election cycles; would segregate those funds in an independent-

7

expenditure-only account or PAC; and would use those funds, starting

immediately, to pay to advocate for the election of candidates who are pro-choice

and supportive of family planning services and to defeat candidates who are not,

without coordinating with any public officials or candidates or their political

committees, campaigns, or agents.

29.     Because of the restrictions of Sections 5/9-2(d) and 5/9-8.5(d) of the

Election Code, Personal PAC estimates that it was prevented from receiving more

than $100,000 of available donor funds during calendar year 2011, money that

Personal PAC would have maintained in an independent-expenditure-only account or

additional PAC. This is money that Personal PAC had a First Amendment right to

receive and spend for independent expenditures under the holdings in *Citizens*

*United* and *Wisconsin Right to Life*. It has been prevented from receiving that money

solely because of Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code.

30.     Because of the restrictions of Sections 5/9-2(d) and 5/9-8.5(d) of the

Election Code, Personal PAC estimates that it will be prevented from receiving tens

of thousands of dollars in available donor funds during calendar year 2012, money

that Personal PAC would maintain in an independent-expenditure-only account or

additional PAC. This is money that Personal PAC has a First Amendment right to

receive and spend for independent expenditures under the holdings in *Citizens*

*United* and *Wisconsin Right to Life*.

31.     Because of the restriction of 5/9-8.5(d) of the Election Code, Personal

PAC has been unable to cash or deposit a check that will become void on May 23,

2012, in the amount of $17,688.26, because the ISBE has taken the position that cashing or depositing that check would be unlawful under the contribution limits.

32.     Without being able to raise money for the purpose of independent expenditures in excess of the current statutory limits, Personal PAC cannot fully and effectively accomplish its mission of preserving reproductive rights and family planning services in Illinois and electing pro-choice candidates to state and local office.

33.     The First Amendment rights of Personal PAC's supporters are likewise unconstitutionally infringed by Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code. But for those provisions of the Election Code, Plaintiffs Love and Newton, among others, are ready, willing, and able to donate, and would immediately donate, more than $10,000 to Personal PAC or to any account or additional PAC that Personal PAC would establish for the sole purpose of making independent expenditures.

34.     If Personal PAC were unable to receive unlimited donations itself, for reasons either logistical or legal, then, but for Section 5-9/2(d) and 5/-9-8.5(d) of the Election Code, Plaintiffs Love and Newton are also ready, willing, and able to establish and maintain one or more additional independent-expenditure-only PACs, solely for the purpose of soliciting and receiving contributions in excess of current limits and using them to make independent expenditures to elect pro-choice candidates.

35.     The contribution limits contained in 10 ILCS 5/9-8.5(d) and the prohibition on the establishment and maintenance of more than one PAC to make

independent expenditures contained in 10 ILCS 5/9-2(d) severely burden Personal

PAC's right to associate with its donors, potential donors, and other like-minded

individuals. They also severely burden Plaintiffs Love's and Newton's rights to

associate with Personal PAC, its other donors, potential donors, and other like-

minded individuals for the purpose of expressly advocating for the election of state

and local candidates who are pro-choice and supportive of family planning services

and defeating state and local candidates who are not.

36.     The ISBE has confirmed that, notwithstanding the decisions in

*Citizens United* and *Wisconsin Right to Life*, it intends to continue to apply Sections

5/9-2(d) and 5/9-8.5(d) of the Election Code both to limit contributions to

independent-expenditure-only PACs or PACs with independent-expenditure-only

accounts, and to prohibit any person, natural or corporate, from maintaining or

establishing more than one PAC.

37.     Under 10 ILCS 5/9-23, a violation of Sections 5/9-2(d) and/or 5/9-8.5(d)

carries civil penalties of up to $5,000 for individuals and up to $10,000 for state

officers and candidates and political committees for statewide office. A violation also

carries potential criminal penalties.

38.     As a result of the restrictions of 10 ILCS 5/9-8.5(d) and 10 ILCS 5/9-

2(d), plaintiffs have suffered irreparable injury to their rights under the First

Amendment and have no adequate remedy at law.

10

## COUNT I
### (42 U.S.C. § 1983)
### Contribution Limits – Personal PAC

39. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

40. The contributions limits contained in 10 ILCS 5/9-8.5(d) severely burden Personal PAC's rights to freedom of speech and association under the First Amendment when applied to funds raised, maintained, and spent solely for the purpose of independent expenditures.

41. The application of the contribution limits contained in Section 5/9-8.5(d) violate Personal PAC's donors' and potential donors' rights to freedom of speech and association under the First Amendment when applied to funds raised, maintained, and spent solely for the purpose of independent expenditures.

42. Funds raised for and spent by Personal PAC for independent expenditures pose no threat of *quid pro quo* corruption or its appearance because independent expenditures are not contributions to, or coordinated with, the activities of political candidates or nominees.

## COUNT II
### (42 U.S.C. § 1983)
### Contribution Limits – Individual Plaintiffs

43. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44. The contributions limits contained in 10 ILCS 5/9-8.5(d) severely burden Plaintiffs Love's and Newton's rights to freedom of speech and association

11

under the First Amendment when applied to funds raised, maintained, and spent

solely for the purpose of independent expenditures. Both are ready, willing, and

able to donate more than $10,000 each to finance independent expenditures by

Personal PAC or to any account or additional PAC that Personal PAC or Plaintiffs

Love or Newton would establish for the sole purpose of making independent

expenditures.

45.     The money that Plaintiffs Love and Newton would donate to Personal

PAC for independent expenditures poses no threat of *quid pro quo* corruption or its

appearance because independent expenditures are not contributions to, or

coordinated with, the activities of political candidates or nominees.

## COUNT III
## (42 U.S.C. § 1983)
## Multiple PACs – Personal PAC

46.     Plaintiffs reallege and incorporate by reference each and every

allegation contained in the preceding paragraphs as if fully set forth herein.

47.     Illinois's prohibition on the establishment or maintenance of "more

than one" political action committee, contained in 10 ILCS 5/9-2(d), severely

burdens Personal PAC's rights to freedom of speech and association under the First

Amendment to the extent it prohibits the formation of an independent-expenditure-

only PAC.

48.     The establishment and maintenance of more than one PAC to make

independent expenditures poses no threat of *quid pro quo* corruption or its

appearance because independent expenditures are not contributions to, or coordinated with, the activities of political candidates or nominees.

## COUNT IV
## (42 U.S.C. § 1983)
## Multiple PACs – Plaintiffs Love and Newton

49.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     Illinois' prohibition on the establishment or maintenance of "more than one" political action committee contained in 10 ILCS 5/9-2(d), severely burdens Plaintiffs Love's and Newton's rights to freedom of speech and association under the First Amendment to the extent it prohibits the formation of an independent-expenditure-only PAC.

51.     The establishment and maintenance of PACs to make independent expenditures poses no threat of *quid pro quo* corruption or its appearance because independent expenditures are not contributions to, or coordinated with, the activities of political candidates or nominees.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for the following relief:

A.     A declaration that the contributions limits contained in 10 ILCS 5/9-8.5(d), and in any applicable rules and regulations regarding that provision, violate the First Amendment when applied to funds raised for independent expenditures.

B.     A declaration that the First Amendment is also violated by the prohibition, contained in 10 ILCS 5/9-2(d), and in any applicable rules and

regulations regarding that provision, against the establishment or maintenance of "more than one PAC," by any person natural person, trust, partnership, committee, association, corporation, or other organization or group of persons, to the extent it prohibits the formation of an additional PAC created solely with funds raised for independent expenditures.

  C.  Preliminary and permanent injunctions enjoining Defendants from enforcing the contributions limits contained in 10 ILCS 5/9-8.5(d), and any applicable rules and regulations regarding that provision, when applied to funds raised, maintained, and spent solely for the purpose of independent expenditures, and 10 ILCS 5/9-2(d), and any applicable rules and regulations regarding that provision, to the extent it prohibits a natural person, trust, partnership, committee, association, corporation, or other organization or group of persons from maintaining or establishing an additional PAC solely with funds raised for independent expenditures.

  D.  Costs and attorney's fees pursuant to 42 U.S.C. § 1988 or any applicable statute or authority.

E.      All other relief that the Court deems just and appropriate.

Dated:  February 14, 2012

                                        Respectfully submitted,


                                        /s/ Juliet V. Berger-White

Matthew J. Piers
Joshua Karsh
Juliet Berger-White
HUGHES SOCOL PIERS
 RESNICK & DYM, LTD.
70 W. Madison, Suite 4000
Chicago, IL 60602
312.580.0100