IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERSONAL PAC, an Illinois not for profit corporation, MARCENA W. LOVE, GRACE ALLEN NEWTON, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM M. MCGUFFAGE, Chairman of the Illinois State Board of Elections; JESSE R. SMART, Vice Chairman of the Illinois State Board of Elections; HAROLD D. BYERS, Member of the Illinois State Board of Elections; BETTY J. COFFRIN, Member of the Illinois State Board of Elections; ERNEST L. GOWEN, Member of the Illinois State Board of Elections; JUDITH C. RICE, Member of the Illinois State Board of Elections; BRYAN A. SCHNEIDER, Member of the Illinois State Board of Elections; CHARLES W. SCHOLZ, Member of the Illinois State Board of Elections, all in their official capacities, <br><br> Defendants. | Judge Marvin E. Aspen <br> Magistrate Judge Sheila M Finnegan <br><br> No. 12 CV 1043 |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR EXPEDITED PERMANENT INJUNCTIVE RELIEF

## INTRODUCTION

This is a First Amendment case seeking to enjoin the enforcement of Section 5/9-2(d) and 5/9-8.5(d) the Illinois Election Code — 10 ILCS 5/9-2(d) and 10 ILCS

5/9-8.5(d). Those sections unconstitutionally restrict the ability of political action committees to fully exercise their First Amendment rights to engage in political speech and to associate with like-minded individuals to jointly engage in political speech. They do so by means that have already been held to violate the First Amendment by the Supreme Court and the Seventh Circuit, in *Citizens United v. FEC*, 130 S. Ct. 876 (2010), and *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139 (7th Cir. 2011).

## BACKGROUND

### I. The Speech at Issue

Plaintiff Personal PAC is a bipartisan, statewide political action committee ("PAC"). Terry Cosgrove Declaration ("Cosgrove Decl.") (attached as Exhibit A) ¶ 2; Marcena W. Love Declaration ("Love Decl.") (attached as Exhibit B) ¶ 2; Grace Allen Newton Declaration ("Newton Decl.") (attached as Exhibit C) ¶ 2. Personal PAC's mission is to safeguard reproductive rights and family planning services in Illinois. *Id.* Personal PAC accomplishes its mission by spending significant amounts of money on political activities such as voter identification programs, professionally developed direct mail, election day get-out-the-vote programs, television advertisements, and volunteer coordination. The purpose of those communications is to help elect state and local candidates who are pro-choice and supportive of family planning services and defeat candidates who are not. Ex. A ¶ 3. Personal PAC makes it possible for Plaintiffs Marcena W. Love ("Love") and Grace Allen Newton ("Newton"), both long-time supporters of Personal PAC, and other like-

2

minded individuals who are pro-choice and supportive of family planning services, to pool their funds and, thus, to speak more loudly and influence the outcome of elections more profoundly than if they were acting alone. Ex. A ¶ 10; Ex. B ¶ 7; Ex. C ¶ 8.

But for the prohibitions contained in sections 5/9-2(d) and 5/9-8.5(d) of the Illinois Election Code, Personal PAC would immediately: (a) create a segregated, independent-expenditure-only account for the purpose of soliciting and receiving contributions in excess of current limits and for use solely for independent expenditures to elect pro-choice candidates, both in the current election cycle and in future election cycles;[1] (b) establish one or more additional independent-expenditure-only PACs to receive those contributions; or (c) become a PAC that exclusively makes independent expenditures, again, to receive those contributions. Ex. A ¶¶ 4-5, 7; Ex. B ¶¶ 3-4; Ex. C ¶¶ 3-4. Furthermore, Plaintiff Love, who is the founder, one of the two original incorporators, and Chair Emeritus of Personal PAC,

---

[1] In the idiom of campaign finance, "independent expenditures" are amounts spent for the purpose of expressly advocating for the election or defeat of a specific candidate, but without coordination with any public official, candidate, or political party. Defining the term "independent expenditure," Section 5/9-1.15 of the Illinois Election Code thus states that:
> "Independent expenditure" means any payment, gift, donation, or expenditure of funds (i) by a natural person or political committee for the purpose of making electioneering communications or of expressly advocating for or against the nomination for election, election, retention, or defeat of a clearly identifiable public official or candidate and (ii) that is not made in connection, consultation, or concert with or at the request or suggestion of the public official or candidate, the public official's or candidate's designated political committee or campaign, or the agent or agents of the public official, candidate, or political committee or campaign.

10 ILCS 5/9-1.15. *See also* 11 C.F.R. 100.16 (for the similar definition used under federal law).

and Plaintiff Newton, who is a member of the Executive Committee of the Board of Directors and a former Chairperson of the Board of Directors of Personal PAC, are themselves ready, willing, and able to establish and maintain one or more independent-expenditure-only PACs, for the same purpose, and to immediately contribute more than $10,000 each to Personal PAC, for the purpose of funding this political speech. Ex. A ¶¶ 6-7; Ex. B ¶¶ 5-6; Ex. C ¶¶ 5, 7. However, sections 5/9-2(d) and 5/9-8.5(d) of the Election Code have prevented Personal PAC, Love, and Newton from raising funds in excess of the statutory limit for independent expenditures and from establishing an additional independent-expenditure-only account or PAC to receive such funds.

The claims of Personal PAC, Newton, and Love are particularly timely, and the potential for irreparable harm particularly acute now due to the upcoming Illinois primary elections on March 20, 2012. Ex. A ¶¶ 4-6; Ex. B ¶¶ 4-5; Ex. C ¶¶ 4-5. As the Supreme Court has emphasized, "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011) (internal quotation marks omitted).

II. **The First Amendment's Protection of Independent Expenditures**

In *Citizens United v. FEC*, 130 S. Ct. 876 (2010), the Supreme Court considered the constitutionality of aggregate annual limits on the amounts a political action committee may spend for independent expenditures and held that a statute or regulation that imposes caps on a PAC's independent expenditures

4

violates the First Amendment. As made clear by *Citizens United*, the government may not limit independent expenditures made by PACs.

Recently, the Seventh Circuit has applied and expanded on the holding in *Citizens United*. In *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139 (7th Cir. 2011), the Seventh Circuit considered the constitutionality of Wisconsin's attempt to cap contributions to, rather than spending by, independent-expenditure groups, holding that what is true for spending is also true for contributions: just as government may not limit independent expenditures themselves, it also may not limit contributions made to a PAC for the purpose of funding independent expenditures. *Wisconsin Right to Life*, 664 F.3d at 154 ("[A]fter *Citizens United* there is *no* valid governmental interest sufficient to justify imposing limits on *fundraising* by independent-expenditure organizations .... [A]s a matter of law and logic, . . . Wisconsin's $10,000 aggregate annual *contribution* limit is unconstitutional") (some emphasis added). *Accord SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) (invalidating the federal aggregate contribution limits as applied to contributions made to independent-expenditure-only organizations).

The rationale for First Amendment protection for independent expenditures is expansive. As the Seventh Circuit summed up the law in *Wisconsin Right to Life*, in the aftermath of *Citizens United*, there is *only one* known "interest the Supreme Court has recognized as sufficient to justify [any form of] campaign-finance restrictions." 664 F.3d at 153. "Over time," many "justifications for restricting political speech have been offered — equalization of viewpoints, combating

5

distortion, leveling electoral opportunity, encouraging the use of public financing, and reducing the appearance of favoritism and undue political access or influence — but the Court has repudiated them all." *Id.* at 153-54. *See also Ariz. Free Enter.*, 131 S. Ct. at 2825 ("We have repeatedly rejected the argument that the government has a compelling state interest in 'leveling the playing field' that can justify undue burdens on political speech."). In the wake of *Citizens United*, the sole cognizable justification for campaign finance restrictions is a governmental interest in preventing *quid pro quo* corruption. *See also Wisconsin Right to Life*, 664 F.3d at 155 ("Furthermore, the Supreme Court has firmly rejected the argument that burdens on political speech might be justified based on their tendency to *indirectly* serve the government's anticorruption interest.") (emphasis in original).

To the extent that government enacts election laws or regulations that are not narrowly tailored to that precise objective, those laws and regulations violate the strict scrutiny required by the First Amendment. *Citizens United*, 130 S. Ct. at 898, 902-11. *See also Ariz. Free Enter.*, 131 S. Ct. at 2825-29; *Wisconsin Right to Life*, 664 F.3d at 153-54. Even more significantly for the claims in this case, the decisions in *Citizens United* and *Wisconsin Right to Life* make clear that restrictions on a PAC's ability to fund independent expenditures can never be justified. They can never survive First Amendment scrutiny because an "independent expenditure," by definition, is not coordinated with a candidate or his or her political party and, therefore, cannot give rise to the appearance of *quid pro quo* corruption or to actual *quid pro quo* corruption. As the Supreme Court has

explained, "separation between candidates and independent expenditure groups" necessarily "negates the possibility that independent expenditures will result in" *quid pro quo* corruption. *Ariz. Free Enter.*, 131 S. Ct. at 2826-27. Therefore, "as a categorical matter," independent expenditures cannot ever "'lead to, or create the appearance of, *quid pro quo* corruption.'" *Wisconsin Right to Life*, 664 F.3d at 153 (quoting *Citizens United*, 130 S. Ct. at 910). "The government's interest in preventing actual or apparent corruption ... cannot be used to justify restrictions on independent expenditures." *Id.*

Under *Citizens United* and *Wisconsin Right to Life*, Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code are unconstitutional as applied to funds raised for independent expenditures. Plaintiffs, therefore, are entitled to relief enjoining the enforcement of those sections.

## ARGUMENT

### I. Plaintiffs Can Easily Meet the Standards for A Preliminary Injunction

The five standards for entry of a preliminary injunction are well-settled. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999); *Brunswick Corp. v. Jones*, 784 F.2d 271, 273-74 (7th Cir. 1986). They require a plaintiff to establish:

(1) A likelihood of success on the merits. "The threshold" for measuring likely success "is low; it is enough that 'the plaintiff's chances are better than negligible.'" *Brunswick Corp*, 784 F.2d at 275.[2]

---

[2] Further, although the plaintiff bears the burden of showing likely success on the merits, within that merits determination, *the government* bears the burden of justifying its speech-restrictive law. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011).

7

(2) Irreparable harm, in the event preliminary injunctive relief were to be denied.

(3) The inadequacy of remedies at law.

(4) A favorable balance of harms – i.e., a comparison of the harm to defendants if an injunction is entered to the harm to plaintiff if it is not. This balancing works as a "sliding scale ...; the more likely the plaintiff will succeed on the merits, the less the balance of ... harms need favor the plaintiff's position." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d at 895. And,

(5) The consequences for the "public interest" – i.e., "the effect of granting the injunction on persons not directly involved in the litigation." *Cooper v. Salazar,* 196 F.3d at 817.

The record in this case clearly establishes that Plaintiffs are entitled to both preliminary injunctive relief and a permanent injunction.

### A. Plaintiffs Are Overwhelmingly Likely to Succeed on the Merits: the Issues in this Case Have Been Resolved Already by the Decisions in *Citizens United* and *Wisconsin Right to Life*.

Section 5/9-8.5(d) of the Code, 10 ILCS 5/9-8.5(d), purports to place limits on the amounts that can be contributed to a political action committee, including for purposes of funding independent expenditures. That section states, in relevant part:

> During an election cycle,[3] a political action committee may not accept contributions with an aggregate value over the following: (i) $10,000 from any individual, (ii) $20,000 from any corporation, labor organization, political party committee, or association, or (iii) $50,000 from a political action committee or candidate political committee. A political committee many not accept contributions from a ballot initiative committee.

---

[3] For political action committees, an election cycle is defined as the calendar year. *See* 26 Ill. Admin. Code §100, App. A, Table B.

8

In addition, Section 5/9-2(d) of the Code, 10 ILCS 5/9-8.5(d), purports to prohibit any person, natural or corporate, from maintaining or establishing more than one political action committee. In relevant part, it provides that:

> Beginning January 1, 2011, no natural person, trust, partnership, committee, association, corporation, or other organization or group of persons forming a political action committee shall maintain or establish more than one political action committee.[4]

Because both provisions directly restrict the ability to raise and spend money for independent expenditures, they clearly violate the First Amendment.

### 1. Plaintiffs Are Overwhelmingly Likely to Succeed on their Claim that the Contribution Caps Contained in Section 5/9-8.5(d) Violate the First Amendment, As Applied to Contributions Used to Fund Independent Expenditures.

The aggregate annual contribution limits in Section 5/9-8.5(d) contain no exceptions for contributions to independent-expenditure-only PACs; for contributions to groups that segregate funds spent on independent expenditures; nor any other allowance for funds that will be used solely for independent expenditures. They are, therefore, flatly unconstitutional.

In all material respects, Illinois's restrictions are the mirror image of the statute the Seventh Circuit has already ruled unconstitutional in *Wisconsin Right to Life*. In *Wisconsin Right to Life*, the offending statute "limit[ed] the amount individuals may contribute to state and local candidates, political parties, and

---

[4] The final sentence of Section 5/9-2(d) goes on to state: "The name of a political action committee must include the name of the entity forming the committee." Plaintiffs do not seek to enjoin enforcement of that particular requirement.

9

political committees to a 'total of $10,000 in any calendar year,'" 664 F.3d at 143, by providing that:

> No individual may make any contribution or contributions to all candidates for state and local offices and to any individuals who or committees which are subject to a registration requirement under s. 11.05, including legislative campaign committees and committees of a political party, to the extent of more than a total of $10,000 in any calendar year.

Wis. Stat. § 11.26(4). Here, Section 5/9-8.5(d) of Illinois's Election Code analogously imposes contribution limits that include, among others, "$10,000 from any individual" during "an election cycle." Enforcement of Illinois's restrictions cannot be reconciled with the Seventh Circuit's nullification of Wisconsin's materially identical restrictions as violations of the First Amendment.

### 2. Plaintiffs Have Established A Likelihood of Success on Their Claim that the "One-PAC-Only" Limitation in Section 5/9-2(d) Violates the First Amendment.

While Section 5/9-8.5(d) prevents Personal PAC from accepting contributions above specified limits, the first sentence of Section 5/9-2(d) *also* prevents Personal PAC, Love, and Newton from establishing any *other* independent-expenditure only PAC to receive and spend the funds that Personal PAC cannot receive and spend itself. 10 ILCS 5/9-2(d). That restriction likewise violates the First Amendment.

As *Citizens United* and *Wisconsin Right to Life* make clear, the *only* permissible restrictions on campaign finance are those that combat one particular species of corruption, *quid pro quo* corruption, *Wisconsin Right to Life*, 664 F.3d at 152, 154, and as applied to an independent-expenditure-only committee, the prohibition against "more than one PAC" contained in Section 5/9-2(d) of the

10

Election Code will not combat *quid pro quo* corruption. That follows both as a matter of law and logic because as *Citizens United* and *Wisconsin Right to Life* make clear, independent expenditures never contribute to *quid pro quo* anticorruption interest. The "separation between candidates and independent expenditure groups negates [any] possibility that independent expenditures will result in" *quid pro quo* corruption. *Ariz. Free Enter.*, 131 S. Ct. at 2826-27.

For these reasons, Plaintiffs' chances of succeeding on the merits are not merely "better than negligible." Both with respect to Section 5/9-8.5(d) and 5/9-2(d), Plaintiffs' likelihood of success is so clear that Plaintiffs have demonstrated their entitlement to *actual* success – to a full judgment on the merits, entitling them to a *permanent* injunction against the enforcement both of 5/9-8.5(d) and the first sentence of Section 5/9-2(d), as applied to independent expenditures. *See, e.g.,* Fed. R. Civ. P. 65(a)(2) (authorizing consolidating consideration of preliminary and permanent relief).

### B. Plaintiffs Will Suffer Immediate and Irreparable Injury Unless the Operation and Enforcement of Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code are Enjoined Immediately.

The fact of irreparable injury is beyond legitimate dispute in this case.

In the first place, "First Amendment violations 'are presumed to constitute irreparable injuries.'" *Wisconsin Right to Life*, 664 F.3d at 145 (quoting *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 867 (7th Cir. 2006) (citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976))).

Second, just weeks from now, in March 2012, Illinois will hold its primary election. If the operation and enforcement of Section 5/9-8.5(d) and 5/9-2(d) are not enjoined immediately, Personal PAC, and its contributors, including Plaintiffs Newton and Love, will be prevented from speaking as loudly as they are entitled and from influencing the outcome of the March 2012 primaries as profoundly as they could if they are permitted to make contributions and fund independent expenditures without the restrictions currently imposed on them by Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code. Ex. A ¶¶ 4-10; Ex. B ¶¶ 4-5, 7; Ex. C ¶¶ 4-5, 8.

Third, Personal PAC is currently holding a check for $17,688.26 that it is *unable to cash or deposit* because the Illinois State Board of Elections has taken the position that to do so would be unlawful under the contribution limits in Section 5/9-8.5(d). Ex. A ¶ 9. On its face, this check will be void on May 23, 2012, at which point Personal PAC will be unable to deposit the check or utilize the funds. *Id.*

Fourth, during calendar year 2011, Personal PAC was required to forego tens of thousands of dollars in contributions offered to it by individual contributors due to the contribution limits in Section 5/9-8.5(d) and the prohibition in Section 5/9-2(d) that prevented Personal PAC, Newton, or Love from establishing one or more additional independent-expenditure-only PACs to accept the "excess" above the contributions that Personal PAC could receive itself. Ex. A ¶ 8. If the Illinois Election Code is not immediately amended, Personal PAC will be prevented from receiving tens of thousands of dollars in available donor funds, money that would be

received into an independent-expenditure-only account or additional PAC, in 2012, a crucial year with primary and general elections. *Id.*

**C. Plaintiffs Have No Adequate Remedy at Law.**

The primary election will be held on March 20, 2012. The chill on Plaintiffs' speech and association rights now cannot be remedied by money damages or any other remedy at law later. A "post-election remedy would not compensate ... for the loss of the freedom of speech." *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998). "The loss of First Amendment freedoms, for even minimal periods of time," cannot be adequately compensated after-the-fact with money damages. *Elrod*, 427 U.S. at 373.

**D. The Balance of Hardships Weighs Decisively in Plaintiffs' Favor.**

Unless the enforcement of Sections 5/9-2(d) and 5/9-8.5(d) is quickly enjoined, Personal PAC and Plaintiffs Newton and Love will be deprived of the ability to fully exercise their First Amendment rights of speech and association during the current election cycle. Ex. A ¶¶ 4-10; Ex. B ¶¶ 3-7; Ex. C ¶¶ 3-8. In contrast, defendants, members of the Illinois State Board of Elections, in their official capacities, will suffer no commensurate harm if injunctive relief is granted.

**E. The Public Interest Will Best Be Served by Entry of an Injunction.**

Under the First Amendment, the public interest is presumptively best served when speech is free, uninhibited, robust, and wide open.

Sections 5/9-2(d) and 5/9-8.5(d) of the Election Code unconstitutionally restrict political speech and association to the extent that they limit contributions

13

made to a PAC for the purpose of funding independent expenditures. They strike at the core of the First Amendment. "[P]olitical speech ... is central to the meaning and purpose of the First Amendment," *Citizens United*, 130 S. Ct. at 892, and they target speech and association during an election cycle, when the First Amendment "has its fullest and most urgent application." *Id.* at 898 (internal citations omitted). This constitutes a public injury that must be avoided. The public interest will be benefitted, not harmed, by the entry of an injunction in this case.

## II. Plaintiffs' Motion Does Not Require an Evidentiary Hearing

The unconstitutionality of Section 5/9-2(d) and 5/9-8.5(d) is purely a legal question. It does not depend on contingent facts. Therefore, no evidentiary hearing is required before an injunction is entered. *Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir. 1977), *aff'd*, 440 U.S. 173 (1979) (Evidentiary hearing was not required before permanent injunction was issued in election dispute where it appeared that nothing that could have arisen in factual hearing would have altered the result: "No purpose would have been served by holding an evidentiary hearing in this case. There was no factual dispute as to the ground on which the injunction was ordered."). *Accord Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 1003 (N.D. Ill. 2000), *aff'd*, 237 F.3d 891 (7th Cir. 2001) ("[T]he court is unpersuaded that any genuine and material or well-disputed factual issue exists herein and that an evidentiary hearing would be productive. The court thus concludes that an evidentiary hearing is not necessary in resolving the Motion for Preliminary Injunction and that the Motion is decidable on the papers filed.");

14

*Floralife, Inc. v. Floraline Intern., Inc.*, 633 F. Supp. 108, 116-17 (N.D. Ill. 1985) ("[W]hen no disputed factual issues are present, an evidentiary hearing is not necessary."); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949.

Injunctive relief might be provided either preliminarily, through entry of a preliminary injunction, followed by litigation to a judgment on the merits or, alternatively, the two steps can be consolidated into one, resulting in expedited entry of a permanent injunction without entry of a preliminary injunction first. *See, e.g.,* Fed. R. Civ. P. 65(a)(2).

## CONCLUSION

For all the reasons stated above, plaintiffs' motion for a preliminary injunction or, in the alternative, for expedited entry of a permanent injunction, should be granted in its entirety.

Dated: February 14, 2012

Respectfully Submitted,

/s/ Juliet V. Berger-White

Matthew J. Piers
Joshua Karsh
Juliet Berger-White
HUGHES SOCOL PIERS
 RESNICK & DYM, LTD.
70 W. Madison, Suite 4000
Chicago, IL 60602
312.580.0100