**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PERSONAL PAC, an Illinois not for profit corporation, MARCENA W. LOVE, GRACE ALLEN NEWTON, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | No. 12-CV-1043 |
| WILLIAM M. MCGUFFAGE, Chairman of the Illinois State Board of Elections; JESSE R. SMART, Vice Chairman of the Illinois State Board of Elections; HAROLD D. BYERS, Member of the Illinois State Board of Elections; BETTY J. COFFRIN, Member of the Illinois State Board of Elections; ERNEST L. GOWEN, Member of the Illinois State Board of Elections; JUDITH C. RICE, Member of the Illinois State Board of Elections; BRYAN A. SCHNEIDER, Member of the Illinois State Board of Elections; and CHARLES W. SCHOLZ, Member of the Illinois State Board of Election, all in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

**I. INTRODUCTION**

Personal PAC, a non-for profit, pro-choice political action committee ("PAC"), brought this suit against members of the Illinois State Board of Elections to stop enforcement of portions of the Illinois Election Code, 10 ILCS 5/9-8.5(d) and 10 ILCS 5/9-2(d). As written, § 5/9-8.5(d)

-1-

limits the amount of money a PAC may accept from an individual or group during an election cycle and § 5/9-2(d) prohibits individuals and groups from forming more than one PAC. Together, Personal PAC argues, these regulations unconstitutionally restrict the amount of money that it may spend to engage in political speech. This suit does not contest restrictions on contributions made directly to political candidates, it instead focuses solely on independent expenditures: money used to advocate for or against a specific candidate without coordination with any public official, candidate, or political party.[1] In light the Supreme Court's decision in *Citizens United v. FEC*, 558 U.S.—, 130 S. Ct. 876 (2010) (finding that the government interest in preventing actual and apparent corruption cannot justify restrictions on independent expenditures) and the Seventh Circuit's recent decision in *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139 (7th Cir. 2011) (finding no valid government interest sufficient to impose restrictions on contributions to independent-expenditure-only PACs), we agree that §§ 5/9-8.5(d) and 5/9-2(d) violate the First Amendment of the United States Constitution. We stress, however, that our ruling is a narrow one. This order prevents the Board of Elections from enforcing only the first sentences of §§ 5/9-8.5(d) and 5/9-2(d) as applied to independent-expenditure-only PACs; the remainder of the Illinois Election Code continues to be fully enforceable, and all parts of §§ 5/9-8.5(d) and 5/9-2(d) continue to be valid as applied to non-independent-expenditure-only PACs.

---

[1] As used in this order "Contribution," "Independent Expenditure," and "PAC" have the same definition as set forth in 10 ILCS 5/9-1.4 *et. seq.*

## II. BACKGROUND

On February 14, 2012, Plaintiffs Personal PAC, Marcena W. Love, and Grace Allen Newton (collectively "Personal PAC") filed a motion for a preliminary injunction or, in the alternative, expedited permanent injunctive relief. Defendants William M. McGuffage and seven other members of the Illinois State Board of Elections, all in their official capacity (collectively "Defendants" or "ISBE"), submitted a brief in opposition, as did the Illinois Campaign for Political Reform ("ICPR"), as amicus.

Section 5/9-8.5(d) of the Illinois Election Code states in full:

> During an election cycle, a political action committee may not accept contributions with an aggregate value over the following: (i) $10,000 from any individual, (ii) $20,000 from any corporation, labor organization, political party committee, or association, or (iii) $50,000 from a political action committee or candidate political committee. A political action committee may not accept contributions from a ballot initiative committee.

10 ILCS 5/9-8.5(d). Section 5/9-2(d) states in full:

> Beginning January 1, 2011, no natural person, trust, partnership, committee, association, corporation, or other organization or group of persons forming a political action committee shall maintain or establish more than one political action committee. The name of a political action committee must include the name of the entity forming the committee.

*Id.* at 2(d).

Personal PAC asserts that, but for these prohibitions, it would immediately: "(a) create a segregated independent-expenditure-only account for the purpose of soliciting and receiving contributions in excess of the current limits and for use solely for independent expenditures to elect pro-choice candidates . . . ; (b) establish one or more additional independent-expenditure-only PACs to receive those contributions; or (c) become a PAC that exclusively makes

independent expenditures, again, to receive those contributions."[2]  Personal PAC further asserts

that Plaintiffs Love and Newton are "ready, willing and able to establish and maintain one or

more independent-expenditure-only PACs, for the same purpose, and to immediately contribute

more than $10,000."  (Mem. at 3–4.)  Therefore, Plaintiffs ask that we enjoin Defendants from

enforcing:

> (1) . . . contribution limits, including those set forth in the first sentence of 10
> ILCS 5/9-8.5(d), as applied to contributions to any independent-expenditure-only
> PACs[, and]
>
> (2) . . . prohibitions against the establishment or maintenance of more than one
> PAC by any person, trust, partnership, committee, association, corporation, or
> other organization or group of persons, including the prohibition to that effect
> contained in the first sentence in 10 ILCS 5/9-2(d), as applied to the establishment
> or maintenance of independent-expenditure-only PACs.

(Reply, Ex. A (Personal PAC's Proposed Declaratory and Injunctive Order of Relief).)

## III.  ANALYSIS

### A.  Preliminary Injunctive Relief

We evaluate Personal PAC's request under the familiar standards for preliminary

injunctions.  To obtain such relief, the moving party must show that its case has some likelihood

of success on the merits, that no adequate remedy at law exists, and that it will suffer irreparable

harm if the injunction is not granted.  *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.

2001); *Nav-Aids Ltd. v. Nav-Aids USA, Inc.*, No. 01 C 0051, 2001 WL 1298719, at *4 (N.D. Ill.

Oct. 25, 2001).  If these three conditions are met, we must then balance the hardships the moving

party will suffer in the absence of relief against those the nonmoving party will suffer if the

---

[2]  In its Reply brief, Personal PAC indicated that it would not reorganize as indicated in
option (a).  (Reply at 8.)  Therefore, we do not rule on whether or not such a hypothetical
reorganization is consistent with the Illinois Election Code or whether the Illinois legislature could
constitutionally restrict contributions to a PAC organized as such.

injunction is granted. *Ty, Inc.*, 237 F.3d at 895. Finally, we consider the public interest—that is, the interest of non-parties—in deciding whether to grant injunctive relief. *Id*. We weigh all these factors, "'sitting as would a chancellor in equity.'" *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). We use a "sliding scale approach" in conducting this analysis, whereby the likelihood of success on the merits and the balance of irreparable harms are inversely proportional. *Id*.; *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994). This sliding scale analysis "is not mathematical in nature" but is "'subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc.*, 237 F.3d at 895 (quoting *Abbott Labs*., 971 F.2d at 12).

*I. Likelihood of Success on the Merits*

To establish a likelihood of success, Plaintiffs need show only that they have a "better than negligible" chance of prevailing on the merits. *Am. Gen'l Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803–804 (7th Cir. 2002); *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999). Personal PAC's argument relies heavily on two cases: *Citizens United* and *Wisconsin Right to Life*. The Supreme Court ruled in *Citizens United* that the government interest in preventing actual or apparent corruption is not sufficient to justify restrictions on independent expenditures, because "independent expenditures . . . do not give rise to corruption or the appearance of corruption." 130 S. Ct. at 909; *see also Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, — U.S. —, 131 S. Ct. 2806, 2826–27 (2011) ("The separation between candidates and independent expenditure groups negates the possibility that independent expenditures will result in the sort of *quid pro quo* corruption with which our case law is concerned." (citing *Citizens*

*United*, 130 S. Ct. at 909–11)).  Following these rulings, the Seventh Circuit struck down a Wisconsin law that set caps on the amounts that individuals could donate in one calendar year "to the extent that it limit[ed] contributions to committees engaged solely in independent spending for political speech." *Wisconsin Right to Life*, 664 F.3d at 143.  The court found that "after *Citizens United* there is *no* valid government interest sufficient to justify imposing limits on fundraising by independent-expenditure organizations." *Wisconsin Right to Life*, 664 F.3d at 154 (emphasis in original).  We agree that the outcome of the current motion follows directly from these two decisions.  In fact, despite Personal PAC's clear comparison to it, Defendants' have not attempted to distinguish the Illinois law from the recently struck down Wisconsin law, and we find no meaningful reason to do so.[3]

Defendants, supported by Amicus, instead ask that we "take judicial notice of the political climate underpinning the Illinois election code," and find that in Illinois there is a real risk that independent expenditure will lead to apparent or perceived corruption.  (Opp'n at 6.) Defendants explain that the Illinois legislature was confronted with a backdrop of political corruption when it enacted the statutory scheme challenged here.  Amicus goes further and focuses its brief on the sordid political history of Illinois, the problems and costs inflicted by political corruption, and the history of the Illinois Election Code.  This background, the parties assert, refutes Personal PAC's argument that there is no risk of apparent or perceived corruption from spending by groups that do not coordinate with candidates.

---

[3] Nor have the Defendants asserted that any other government interest would be sufficient to uphold the restrictions.  *Cf. Wisconsin Right to Life*, 664 F.3d at 153 ("[P]reventing actual or apparent quid pro quo corruption is the *only* interest the Supreme Court has recognized as sufficient to justify campaign-finance restrictions." (emphasis in original)).

In making this argument, Defendants contests the categorical rule that independent expenditures do not lead to *quid pro quo* corruption.  The parties do not however argue that such a rule has not been adopted by the Seventh Circuit, and such an argument would have been unsuccessful.  *See e.g. Wisconsin Right to Life*, 664 F.3d at 153 ("*Citizens United* thus held as a categorical matter that 'independent expenditures do not lead to, or create the appearance of, *quid pro quo* corruption.'") (citing *Citizens United*, 130 S. Ct. at 910).  Instead, Defendants argue that "[t]his history of political corruption [in Illinois] takes this case outside *Citizens United*, which was premised upon the idea that independent expenditures were free from the concerns of corruption presented by coordinated contributions to candidates.  In Illinois, that premise simply does not apply."  (Opp'n at 7; *see also* Amicus at 10 ("[W]here there is . . . evidence that independent expenditures do lead to, or create the appearance of, *quid pro quo* corruption, *Citizens United's* categorical imprimatur of independent expenditures as harmless should not be applied . . . this is such a case.") (citing *Western Tradition P'ship, Inc. v. Attorney General of the State of Mont.*, — P.3d —, 2011 WL 6888567 (Mont. Dec. 20, 2011)).[4])

Despite the opposing parties' ample effort to disprove the premise of *Citizens United*, we decline the invitation to study Illinois' political history.  As the Seventh Circuit explained, "this is a legal issue, and resolving it does not require an evidentiary record."  *Wisconsin Right to Life*, 664 F.3d at 151.  Regardless of what Defendants allege is a fallacy in *Citizens United's* premise,

---

[4] In *Western Tradition*, the Supreme Court of Montana declared that "*Citizens United* was a case decided upon its facts, and involved 'unique and complex rules' . . . ." 2011 WL 6888567, at *4.  It continued, "The [Supreme] Court, citing *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 464, 127 S. Ct. 2652, 2663–64 (2007), clearly endorsed an analysis of restrictions on speech, placing the burden upon government to establish a compelling interest.  *Citizens United*, 130 S. Ct. at 898.  Here the government met that burden."  *Western Tradition*, 2011 WL 6888567, at *5.  For the reasons stated above, and particularly in light of *Wisconsin Right to Life*, 664 F.3d 139, this reasoning is not persuasive when applied to independent expenditures in the Seventh Circuit.

it is not our province to modify the rulings of the Supreme Court or the Seventh Circuit. Justice Ginsberg recently stated such in a separate statement respecting the grant of the application for stay in *Western Tradition*, 2011 WL 6888567: "A petition for certiorari will give the Court an opportunity to consider whether, in light of the huge sums currently deployed to buy candidates' allegiance, *Citizens United* should continue to hold sway. Because *lower courts are bound to follow this Court's decisions until they are withdrawn or modified*, however, . . . I vote to grant the stay." Order Granting Stay in *Am. Tradition P'Ship, Inc. v. Bullock, fka Western Tradition*, — U. S. —, 2012 WL 521107 (2012) (emphasis added) (citation omitted). As Defendants acknowledge, "If the Supreme Court grants a writ of *certiorari* in the Montana case, the parameters of *Citizens United* as applied to political climates of individual states may be explained." Until that time, we, like the Montana Supreme Court, are bound to follow the Supreme Court's decisions and repeat that, even in Illinois, independent expenditures do not lead to corruption. Thus, regulations imposing limits on fundraising by independent expenditure organizations cannot be justified—this applies equally to contribution limits as well as limits on the number of independent-expenditure PACs an individual or group may establish. Personal PAC has therefore demonstrated a better than negligible chance of prevailing on the merits, as well as inevitable actual success on the merits.

    *ii. Remaining Factors*

    As explained by the Seventh Circuit, "When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). This is so

because there is generally no adequate remedy at law "as any post-election remedy would not compensate . . . for the loss of the freedom of speech," *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) (citing *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 63 F.3d 581, 585 (7th Cir. 1995)), and the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976). "Concomitantly, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because 'it is always in the public interest to protect First Amendment liberties.'" *Joelner*, 378 F.3d at 620 (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).[5]

We find these general prepositions to be particularly true here as this motion comes in the midst of the Illinois primary elections, scheduled for March 20, 2012, the 2012 general election is around the corner, and Personal PAC has alleged that it has forgone donations and is holding a check for over $17,000 that it is unable to cash or deposit. In the absence of an injunction, Personal PAC will be limited in how it can contribute to the free discussion of candidates and government affairs. *Cf. Ariz. Free Enter.*, 131 S. Ct. at 2828 ("[T]here is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of

---

[5] We acknowledge Defendants argument that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (Opp'n at 6 (citing *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S. Ct. 359, 363 (1977).) However, this argument simply cannot apply when the statute in question is unconstitutional.

governmental affairs, including discussion of candidates." (internal quotations and alterations omitted)).[6] Therefore, we find that an injunction is appropriate.

## B. Defendants' Remaining Arguments

### I. Personal PAC's Direct Contributions

Defendants point out that Personal PAC, unlike the plaintiffs in *Citizens United*, 130 S. Ct. 876, and *Wisconsin Right to Life*, 664 F.3d 139, makes direct contributions to candidates. Defendants argue that this difference sufficiently distinguishes Personal PAC such that the holdings in *Citizens United* and *Wisconsin Right to Life* do not apply, and ISBE can constitutionally impose limits on contributions to Personal PAC. In its Reply, Personal PAC asserts that it only seeks to vindicate its right to create a separate PAC that would solely engage in independent expenditures, and once doing so, to receive unlimited contributions. In other words, it is not proposing to make independent expenditures and direct contributions from the same PAC. This concession effectively eliminates any distinction between Personal PAC and the organizations in the precedential cases. Moreover, this order is consistent with the precedent in that it only applies to enforcement of 10 ILCS 5/9-8.5(d) and 10 ILCS 5/9-2(d) against independent-expenditure-only PACs.

---

[6] Amicus also asserts that "[p]olitical corruption and undue influence are issues of broad public importance in Illinois, and the contribution limit at issue in this case is designed to protect the public against such improper political influence and the corruption it breeds." Thus, it argues, the public interest would be furthered by denying the injunction. (Amicus at 13–15.) We disagree. "[T]he public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression." *Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001).

*ii. Relief Must be Narrowly Tailored*

As we have already decided that injunctive relief is necessary, we turn now to Defendants' request that any relief be narrowly tailored such that Illinois can continue to enforce anti-corruption elements of the Election Code. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S. Ct. 2794, 2801 (1985) ("Nor does the First Amendment involvement in this case render inapplicable the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it."). We agree with Defendants and repeat that our order is a narrow one.

This order enjoins enforcement of only the first sentences of 10 ILCS 5/9-8.5(d) and 10 ILCS 5/9-2(d) as applied to independent-expenditure-only PACs. Those sections may continue to be enforced outside of the specific applications enjoined and all other provisions of the Election Code continue to apply as written. This narrow ruling, among other things, allows for enforcement of the first sentence of § 5/9-2 to bar individuals and groups from creating more than one PAC that makes coordinated expenditures; it also allows for full enforcement of the reporting requirements set forth in § 5/9-8.6©.

Defendants additionally assert that if we enjoin the contribution limits in § 5/9-8.5(d), and allow Personal PAC to accept unlimited contributions after converting to a independent-expenditure only PAC, we could avoid reaching the constitutionality of the one-PAC limit in § 5/9-2(d). We disagree that this solution would result in a narrow ruling that still vindicates Personal PAC's constitutional rights as it would prevent Personal PAC from managing two

PACs, one for direct contributions and one for independent expenditures. Such a result is not warranted.[7]

## C. Preliminary vs. Permanent Relief

Finally, we must decide whether preliminary or permanent injunctive relief is appropriate. Personal PAC has moved for a permanent injunction pursuant to Federal Rule of Civil Procedure 65(a)(2) and further argues that an evidentiary hearing is not required as the purely legal question addressed above does not depend on any contingent facts. We agree. "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546, 107 S. Ct. 1396, 1404 (1987). We found above that Plaintiffs are entitled to actual success on the merits. We therefore find that a permanent injunction is the appropriate relief.

In opposition, Defendants argue that a permanent injunction would be premature as it would deny the Illinois General Assembly an opportunity to enact new legislation in response to *Wisconsin Right to Life*, 664 F.3d 139. Defendants request that any injunctive relief be preliminary until at least the adjournment of the current Spring 2012 legislative session. However, we are presented with no legal basis for imposing a preliminary injunction, rather than a permanent injunction, so that we can "wait and see" what the legislature might do. Furthermore, we agree with Personal PAC that any potential future amendment to the Election Code does not affect our current obligation to enjoin an unconstitutional provision.

---

[7] Defendants also take issue with Personal PAC's original proposal to create a segregated independent-only account under the same PAC. Personal PAC however ameliorated this concern by dropping the request to make contributions and independent expenditures from a single PAC. *See supra* note 2 and accompanying text. We therefore do not address this issue.

## IV. CONCLUSION

The ISBE enacted 10 ILCS 5/9-8.5(d) and 10 ILCS 5/9-2(d) to "regulate contributions and expenditures related to elections and electioneering," and to "curb corruption in Illinois politics." (Opp'n at 2, 5.) While these motivations are sound and worthy, it is not our job to consider the efficacy of a piece of legislation or the motives of its enactors in determining its constitutionality. Nor do we make that constitutionality determination on a clean slate. Our obligation is to interpret and follow the Constitution and binding precedent. In this case, the Supreme Court and the Seventh Circuit speak clearly: the First Amendment prohibits governments from limiting contributions to independent-expenditure-only PACs. We thus order that Defendants not enforce the contribution limits sets forth in the first sentence of 10 ILCS 5/9-8.5(d), as applied to contributions to any independent-expenditure-only PACs. We further order that Defendants not enforce the prohibition against the establishment or maintenance of more than one PAC contained in the first sentence of 10 ILCS 5/9-2(d), as applied to the establishment or maintenance of independent-expenditure-only PACs. It is so ordered.

_____

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: March 13, 2012

-13-